UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.

**HAAD RASHAD CHILDS,**

      **Defendant.**

:

:

:

Case No. 2:23-cr-108
Judge Sarah D. Morrison

## OPINION AND ORDER

On August 4, 2022, Franklin County Sheriff's Deputies pulled over a blue Nissan Rogue for failure to display a license plate. (ECF No. 1.) Defendant Haad Rashad Childs was driving the car. (*Id.*) On approach, Deputy Kris Koller paused at the Nissan's rear bumper to examine a temporary license plate pasted to the inside of the rear windshield. (Gov't Exh. A[1], 1:48.) Deputy Koller tapped the windshield, directing his partner's attention to the plate. (*Id.*, 1:49.) Mr. Childs asserts that the traffic stop should have ended right then because the Deputies no longer had reasonable suspicion of an ongoing traffic violation. Because the Court agrees, Mr. Childs's pending Motion to Suppress (Mot., ECF No. 27) is **GRANTED**.

---

[1] The Government manually filed a thumb-drive containing two video files: Exhibits A and B. (*See* ECF No. 46; see also Hr'g Tr., 69:3–6.) That video was filed with the consent of defense counsel and admitted by the Court. (Hr'g Tr., 3:23, 69:7–11.) All citations to "Hr'g. Tr." are to the 'rough' transcript prepared for the Court's use in rendering this Opinion and Order.

I.   **FACTUAL BACKGROUND**

Deputy Koller's cruiser camera captured the August 4, 2022 traffic stop. (Gov't Exh. A.) The video shows Deputy Koller exit his cruiser after Mr. Childs parked the Nissan. (*Id.*, 1:45.) Before engaging Mr. Childs, Deputy Koller stopped at the rear bumper to examine the temporary plate and point it out for his partner, Deputy Jon Dillon. (*Id.*, 1:48.)

Deputy Koller proceeded to Mr. Childs's window, where they exchanged words:

> KOLLER:   What's up, man? I can't see your tag, man. Your back window is so dark, I can barely see your tags so I didn't think you had a license plate.
>
> CHILDS:   [Inaudible.]
>
> KOLLER:   You got ID on you or license or anything? Yeah, I don't know why they quit . . . we actually run into this a lot, you know, the old cardboard ones they used to put on the . . .
>
> CHILDS:   Bumper, yeah.
>
> KOLLER:   You know what I mean.
>
> CHILDS:   I just bought this car, you know, like 3 or 4 days ago.
>
> KOLLER:   Okay. I'll get back with you in one minute, I ain't gonna . . . I ain't sweatin' it. Alright.

(*Id.*, 1:52.) After Mr. Childs produced his license, Deputy Koller walked to the back of the Nissan. (*Id.*, 2:26.) While standing between the Nissan and the cruiser, Deputy Koller read the temporary plate number into his radio. (*Id.*, 2:41.) He then returned to the cruiser.

2

When Deputy Koller ran a records check on Mr. Childs's license, he found a Florida warrant for "dangerous drugs." (*Id.*, 6:30.) He then escorted Mr. Childs into the back of his cruiser, uncuffed. (*Id.*, 7:36.)

While in the cruiser, Mr. Childs admitted that there was marijuana in the car. (*Id.*, 13:55.) Deputy Dillon then performed a vehicle search. (*Id.*, 18:47.) He recovered a loaded handgun from the center console. (*Id.*, 19:24.)

## II.     PROCEDURAL HISTORY

On May 16, 2023, a federal grand jury indicted Mr. Childs on one count of being a felon in possession of a firearm. (ECF No. 12.) Six months later, Mr. Childs filed the instant Motion to Suppress. (ECF No. 27.) The Government responded (Resp., ECF No. 31) and the parties appeared for argument on December 19, 2023 (*see* ECF No. 44).

Mr. Childs moves the Court to "suppress all evidence obtained pursuant to an illegal seizure and search including the firearm and any statements made by Mr. Childs." (Mot.) He argues that the Deputies lacked reasonable suspicion to continue the traffic stop once Deputy Koller saw the temporary plate in the rear windshield and he was, thus, unlawfully seized. (*Id.*)

## III.    LEGAL STANDARD

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. "It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). A

3

routine traffic stop is a seizure, though it is "more analogous to a so-called *Terry* stop than to a formal arrest." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citing, *inter alia*, *Terry v. Ohio*, 392 U.S. 1 (1968)) (internal quotation and further citation omitted) (cleaned up). Such a stop is characterized by limited scope and duration. As to scope, "the stop and inquiry must be 'reasonably related . . . to the justification for the initiation.'" *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975) (quoting *Terry*, 392 U.S. at 29). The "tolerable duration" is determined by reference to the infraction that serves as the traffic stop's "mission." *Rodriguez*, 575 U.S. at 354 (citing *Illinois v. Caballes*, 543 U.S. 405 (2005)). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (further citation omitted). "An officer may not continue to detain a motorist once the purpose of the traffic stop is complete unless something that occurred during the stop caused the officer to have independent reasonable, articulable suspicion of criminal activity." *United States v. Jones*, 479 F. App'x 705, 708 (6th Cir. 2012) (further citation omitted). "It is the State's burden to demonstrate that the seizure it seeks to justify . . . was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

Although the Fourth Amendment does not itself prohibit unlawfully obtained evidence, courts invoke the "exclusionary rule" to do so. *Arizona v. Evans,* 514 U.S. 1, 10 (1995). Evidence excludible under the rule includes "the primary evidence obtained as a direct result of an illegal search or seizure" and any "evidence later

4

discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237–38 (2016). The exclusionary rule aims to safeguard both Fourth Amendment rights and competing law enforcement interests. *Herring v. United States*, 555 U.S. 135, 139 (2009). Because exclusion is a drastic remedy, it is appropriate only when the deterrent effect outweighs any costs. *Herring*, at 139. A defendant seeking suppression bears the burdens of production and persuasion. *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 878 (S.D. Ohio 2016) (Marbley, J.) (citing *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014)).

**IV.    DISCUSSION**

The parties agree that Deputy Koller had probable cause to initiate the August 4, 2022 traffic stop. (Hr'g Tr. 76:17–21.) In particular, he did not see a rear license plate. (*Id.*, 8:1–11.) Ohio law requires that a driver display any temporary license plate "in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle." Ohio Rev. Code § 4503.21(A)(3). It also prohibits a driver from covering a temporary plate "by any material that obstructs its visibility." Ohio Rev. Code § 4503.21(A)(4). The parties disagree as to whether Deputy Koller continued to have probable cause of a civil traffic violation, or reasonable suspicion of criminal activity, after he saw the temporary plate in the rear windshield one minute and 48 seconds after his cruiser camera started recording ("1:48").

In Mr. Childs's view, the purpose of the traffic stop was complete at 1:48. He cites *State v. Chatton*, 463 N.E.2d 1237 (Ohio 1984) for support. There, an officer

5

stopped Mr. Chatton's vehicle, which did not display front or rear plates. On approach, the officer saw a temporary plate on the back dash—which was a permissible display under the statute as then in effect. He then asked Mr. Chatton for his license, which was suspended, resulting in criminal charges. The Supreme Court held that the records check was unconstitutional:

> [W]here a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable.

*Id.*, 463 N.E.2d at 1240–41.

Ohio Rev. Code § 4305.21 has since been amended to include "plain view" and "no obstruction" requirements. *See* Am. Sub. H.B. 632, 115th Gen. Assemb., Reg. Sess. (Ohio 1984). But the Ohio Supreme Court has not defined those terms and it is hard to find a throughline in decisions from Ohio Courts of Appeals. *Compare, e.g., State v. Core*, C.A. No. 29776, 2023 WL 7413486 (Ohio Ct. App. Nov. 9, 2023) (collecting cases and concluding that temporary plate was not displayed "in plain view") *and State v. Cromes*, No. 17-05-07, 2006 WL 3802183 (Ohio Ct. App. Dec. 28, 2006) (collecting cases and concluding that permanent plate was properly displayed). Still, the Sixth Circuit's decision in *United States v. Jones*, 479 F. App'x 705 (6th Cir. 2012) is instructive. In *Jones*, the circuit court reversed the district court's denial of a motion to suppress evidence obtained in a traffic stop. Just as here, the initial stop was based on failure to display a rear license plate. And just as here, the officer noticed a temporary plate in the rear window as he approached the

6

vehicle. Mr. Jones's temporary plate was obscured by fog, so the officer "could not make out the numbers until he was 6–12 inches away from the vehicle and shined his flashlight on the plate." *Id.* at 707. After reviewing Ohio law on the topic, the court concluded that, at the time of the stop, the law made clear "that an unobstructed and unilluminated temporary license plate affixed to a vehicle's rear window that was both visible and legible from the rear of the vehicle did not violate" § 4503.21. *Id.* at 710. And although the temporary plate was obscured by fog, the court observed that the statute "does not mandate the impossible and force drivers to be responsible for elements outside of their control[.]" *Id.* at 711.

Mr. Childs was driving a new car with a temporary plate affixed flush to the inside of the rear window. The temporary plate was issued on a piece of paper, in accordance with Ohio's then-current practice. (Hr'g Tr., 30:18–23 ("Now what they do is they – it's just on a regular sheet of paper, and they print them out, you know. They just stick it on the inside of the rear window, which . . . you know, it's not very visible.").) As Deputy Koller explained to the Court, paper cannot withstand the elements as well as the old cardboard versions, so temporary plates have to be posted on the inside of the window. (*Id.*, 42:1–5 ("It was taped to the inside of the window, which . . . Ohio used to use the cardboard ones that you put on the bumper. I mean, those are much better, in my opinion, but now they have got cheap and switched to the paper ones; and obviously, if you put it on the bumper . . . it's going to be gone."); *see also* Gov't Exh. A, 1:52.) The plate was flush[2] to the window with

---

[2] When Deputy Dillon lifted the tailgate during the vehicle search, the paper did not flap or flutter. (Gov't Exh. A, 21:42.)

nothing between it and the glass. Although the glass was tinted, Deputy Koller does not argue that the level of tint was illegal (*see* Hr'g Tr., 34:5–7) or that it actually impeded his ability to read the plate. The dashcam video shows Deputy Koller read the plate number into his radio without straining to discern its characters. (Gov't Exh. A, 2:41.)

These facts do not support a finding that Deputy Koller had reasonable suspicion (let alone probable cause) to detain Mr. Childs after 1:48. *Cf. United States v. Elmore*, 304 F.3d 557, 561 n.1 (6th Cir. 2002) (concluding that an officer lawfully continued a traffic stop when "the temporary tag in the rear window of the car was obscured and virtually unreadable"). The evidence obtained after 1:48 is thus fruit of the poisonous tree and the Motion to Suppress is **GRANTED**. *Cf. Delaware v. Prouse*, 440 U.S. 648, 663 (1979) ("[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.").

The Government urges a different result. In its response, the Government argues that (i) Deputy Koller had probable cause to pull over the Nissan based on failure to display a license plate; (ii) Deputy Dillon had probable cause to search the vehicle based on Mr. Childs's admission to possessing marijuana; and (iii) Mr. Childs's pre-search statements are admissible despite not having been read his

8

*Miranda* rights. (Resp.) These arguments do not address whether Detective Koller had a lawful basis to ask Mr. Childs for his license after seeing the temporary tag in the rear windshield. At the hearing, the Government offered only the Deputies' opinion testimony that Mr. Childs's temporary plate was improperly displayed and attorney argument.[3] But without case law or legal analysis to buttress the argument, the Court is not persuaded.

**V.     CONCLUSION**

For the reasons above, the Motion to Suppress (ECF No. 27) is **GRANTED**.


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Government offered *Ohio v. Robinette*, 591 U.S. 33 (1996), for the proposition that police officers have a right to identify and ask questions of a driver who is pulled over for a traffic violation. (*See* Hr'g Tr., 72:1–6.) *Robinette*, which holds that "the Fourth Amendment [does not require] that a lawfully seized defendant must be advised that he is 'free to go' before his consent to search will be recognized as voluntary[,]" is inapt here. *Id*. at 35.